Thank you. Good morning. My name is Ann Odelson and I represent Appellant Scottsdale Insurance Company and I'm with the law firm of Kennedy's in New York. Before discussing the appeal, this court issued a sua sponte order saying whether they in fact have jurisdiction to hear this appeal. I note that Plaintiff Greater New York and my co-defendant Burlington didn't raise this in their papers, whether this appeal was proper. So I'm just pointing that out. But to address the courts, they wanted us to explain why this case is distinguishable from another case involving Scottsdale, Scottsdale v. McGrath. This order that we're appealing from is a final order and the court has jurisdiction to hear it. The whole issue in this case is whether there was a written contract that required Scottsdale to provide additional insured coverage to an insured of Greater New York. But isn't there a problem whenever there is a voluntary dismissal? Now, I know you weren't the ones who did the voluntary dismissal, and so the usual cases on that aren't directly in point, but you didn't comply with our Rule 54B, did you? I mean, you can make sure somebody who is a third party could have gotten this by getting a statement by the court that this was not for purposes of delay, and you didn't do that, did you? We didn't do it, but I don't think based on the circumstance of this case where we're a defendant and we didn't assert a counterclaim and the claims that were brought against us is for the duty to defend, but also with respect to the duty to identify, which this court has repeatedly held that that awaits liability determinations in trial. So federal courts have, and New York State courts, have always, most cases, issued an order saying it's premature to decide the duty to indemnify. That's a determined honor liability finding. In fact, in Westport Insurance Company, this court considered an appeal with similar facts. Insurance company argued no duty to indemnify. Court found issues. Yes, they did. Issues regarding indemnity, premature, it's got to wait a liability finding, and went forward with the appeal. They found that the insurance company had a duty to defend, which is, I'm going to argue, a little different than my case. I want to argue there's no duty to defend, but the court still found that it had jurisdiction. So in most of the cases where it's premature and it's been dismissed, there is other issues going on with those cases where a factual determination, there's a possibility it could go back to the court, and I understand why a court wants to abstain from doing that, or you need to make a motion. But in my opinion, you know, this case is different. It's just one single issue on the duty to defend. Good. Now, on the merits. On the merits, it's really straightforward. In 2013, there was a tender by Greater New York saying our client, Park City, is an additional insured, and there's a contract. The only contract that was produced in 2013 was a proposal. It contained no indemnification or insurance procurement language. This is all happening in a labor law action in state court. The court, in about 2018, the parties moved for summary judgment. Park City moves on its claim for indemnification and breach of contract for failure to procure insurance, and the court says there's no contract. There's been depositions. There's been discovery. There's no contract. So it's not race-judicata, and it's not collateral assault? I would argue that it's both. The whole issue in this case about, in this DEJ action, is whether there's... On the substance, there's no reasoned argument that the duty to add that extra insured existed, and that there was a written contract, correct? I'm sorry, there's no due... I'm sorry, I'm getting over a cold too, so my ears, I apologize. The decision that you just adverted to, the 2013 decision, was manifestly wrong, because, in fact, the contract did exist, and the obligation that was argued was clearly expressed in the written contract, right? We're not sure where that contract came from. We don't know why it was produced in 2022. Are you doubting the validity of the contract, the authenticity of the contract? We're not sure about where that... I don't know where that contract came from. Our insured testified, and Greater New York, the insurance company that retained Park City, that brought the indemnification claim in the underlying action, said there was no contracts. Burlington, who is the insurance company of another co-defendant, they're the ones that found that contract. Our insured testified, based on a subpoena that was issued by the lower court, he didn't get a copy of that contract. They tried to use that contract in the underlying action to go back and argue to the court, oh, here's the contract, and the court denied the motion to renew. I thought you didn't argue that there was privity below for collateral estoppel purposes. Is that right? We did argue it was more that the court should abstain, like the court has done in other... That's a different argument, though. So I'm trying to understand, following up on Judge Parker's question, what exactly your theory is for why the contract has already been decided. And I didn't see from, until your reply brief, I think, this argument that you're raising now about collateral estoppel. Isn't that waived? So I do not believe we waived a collateral estoppel. Our first argument was abstention. There's already been a decision, and you're going to get inconsistent findings, which we have right now. So that's going on in the state court action and the federal. Right. We also raised judicata. The issue's already been decided. For collateral estoppel, I strongly believe with the abstention, but we all represent insurance companies. And in the underlying action, in this particular case, the real party in interest is an insurance party. There's an indemnity-indemnitore relationship. So even though we were not a party to the underlying action, our defense counsel retained by the two parties in interest, which is insurance companies who are seeking to pass the risk to one another. This issue has already been litigated. Like I said, it was Burlington, who is my co-defendant, trying to get a risk share with me. Their investigator found this contract, but Park City never said there was a contract. In fact, said the opposite, and it wasn't produced. So I believe collateral estoppel, res judicata, abstention, there's many decisions decided. It's questionable whether those were raised. But there is an issue about the statute of limitations, is that? There was also a statute of limitations. There is New York case law, in fact, a 2019 decision by a federal court that said the time, the statute of limitations, is when an insurance company declines coverage. But isn't that not true when the question is about indemnity and defense, that you have Gosley, the decision of the appellate division, which is the only New York, as against comments by federal ones, that says it doesn't start to run until the whole case is over, and that isn't so, and under that, you are subject to the statute. Their claim is within the statute of limitations, under Gosley, it's not. So, under Gosley, yes, that's a 2016 case from state courts, but there's a federal case case. Yeah, but this is an issue of state law. So, you know, I don't care terribly much what federal courts say about state law, unless they're citing me state cases, and the only state case is Gosley, which says this is timely. We do refer to a court of authority case that is a state court case that also said it's when you disclaim coverage, and that's when the breach. So, I understand there is, Gosley is saying that, but there's more recent cases that are found that the breach occurs when you disclaim coverage, which we did. Is this question sufficiently uncertain that we should certify? I don't. I would go more for the more recent cases from state court and court authority, and then those cases. What was the court you're citing in court authority? What was the state court you're citing? That was a New York Supreme Court decision. We have a lower court, and we have a court of appeal. I mean, we don't have a court of appeals decision, but we have an appellate division decision. Yes. And that's the only appellate division decision, and that says it starts to run when things end. I would argue that the state court also cites two other decisions to support its finding, and these cases are more recent. Tell me on which pages of your brief do you argue collateral estoppel and res judicata? Where do you say these claims are barred by collateral estoppel? Where do you say they're barred by res judicata? So, we do raise it, as the court noted in the reply, in our reply brief to discuss it, but we do. Okay. So, in your main brief, it was not raised, correct? In the main brief, we went more on res judicata. Did you raise res judicata in your brief other than in the reply brief? We, in the initial brief, we were talking about, yes, there was a judgment. This issue was litigated in the underlying action. This is not a trick question, ma'am. I'm asking you a straightforward question, not whether you talked about it, not whether you inferred about it. Did you raise res judicata? Did you raise collateral estoppel? And give me, if so, just simply give me the page sites and I'll be a happy judge. I'm going to start with, it was, I believe, the second point in our brief. Which brief? Dated what? The initial brief. When we talk about, first we talk about the statute of limitations, then we talk about the contract, and then we talk about how the court should have abstained, and it's in that discussion. Read me the, read me a sentence raising res judicata and raising collateral estoppel. And if you can't find it now, you can always tell us in the reply. On 14, sorry, on 14. Main brief, you say page 14? Through 18. I'm sorry? 14 to, through 18. Okay. And then we go into more detail in reply. Thank you. I will take a look, thank you. Mr. Chubin. To please the court. Mike Chubin from the law firm of Kinney, Losovich, Riley, and Wolf for plaintiff appellee, Greater New York Mutual Insurance Company. Your honors, if I can start first with the statute of limitations question that you raised. The statute of limitations is crystal clear. It's not one that has to go back. There is no inconsistent verdicts. On the duty to defend, which this case is about, every court has said point blank. It accrues when the underlying action is over. We say in our brief, not only state court after Galley that says it from 2018, 2021. We say the federal courts that say it. So it is consistent. Do you have a decision by the New York Court of Appeals in point? No, but every active that has addressed it in the state of New York has said it accrues based on Galley. At the end of the underlying case, and that case is still on go. So you say that there is no conflict. And even though the New York Court of Appeals hasn't spoken, it's not an issue we need to question. Correct, your honor. And in fact, the cases that were cited, Casimus and the bus case, which is a trial court case, they didn't deal with the duty to defend. That's the key issue. So there is not one case dealing with the duty to defend. Clearly, it's a difference between the two with respect to the statute in New York. Okay. Correct. So as to the duty to defend, it's crystal clear. Now, one case going the other way. I want to turn to the res judicata comments. Res judicata is three elements, and they're simple. You need a final judgment. That's number one. We don't have that. So you cannot establish res judicata no matter what. As I said, the underlying case is still going on. You can't have res judicata when there's no final judgment. So they can't sit here and argue. We have a res judicata decision here. And the issues, because there's two other things, identity or privity of parties and identity of cause of action, there is no other cause of action that's the same in the underlying. The cause of action here is duty to defend. That's not at issue in the underlying case. That was never at issue in the underlying case because it's between parties, not insurance companies like the present matter. So you can't have res judicata to address that issue even if your honors are going to consider it. Abstention, it simply doesn't apply here. What is the status of the underlying action? I mean, it seems like it's been going on for quite a long time. It has, your honor. And although it's not on the record, it's scheduled to go to trial in a few months. OK, thanks. You're welcome. Abstention doesn't apply here. There's no reason to abstain. All the factors relating to abstention, will the judgment serve a useful purpose? Yes, it will. It will establish duty to defend between parties who have been fighting over it. Finalized relief, yeah. We're getting the relief that we thought that we should have gotten back in 2013. This is not a race to res judicata. There is something a little bit odd by the other side arguing abstention and at the same time saying this is so final that there is jurisdiction. In a funny way, the two things are running against each other. Absolutely, your honor. And I point out, they crossed me for summary judgment, right? They didn't ask to abstain. They said, we're entitled to summary judgment based on that decision below. That's not abstention. It's the opposite of abstention. It's going forward. So candidly, the abstention case is cited and are easily differentiated. Those had to do with the duty to indemnify. The Traveler's case, the Lafarge case, the Titan case, they dealt with the duty to indemnify. As counsel conceded, the courts say it's got to wait until the underlying action goes forward so there's a determination on liability. That's not what's at issue here. We're on duty to defend. Is there a possibility of coverage based upon the allegations and the information known? All that was required is that there was a contract. We know there is. It's undisputed there was a contract. Seawick, the opponent, testified there was. I thought your opponent just said there was inadequate proof or lacking proof of the existence of a contract. I heard that. But it's not accurate. He testified that the contract was accurate. This is after the fact. In our case, he testified. It's in our record. And if your Honor bears with me, I'll give you the exact site of the record. It's on the A500, Your Honor. And I will give you a quote. Bear with me one second, please. All right, Your Honor, it's A545, A552, A553, A554. That's Seawick's deposition in which he was asked about the contract. He was asked if this is your signature on the contract. He verified it. Your Honor, I have five seconds left. Any questions before I go? Thank you, counsel. Mr. Glazer. Good morning. Yale Glazer, Lazeri Potage, Kogus and Moyle for appellee of the Burlington Insurance Company. I believe Mr. Chubin has adequately represented the statute of limitations issue. I just wanted to point out that the contract issue which was raised, not only, it seems like Burlington was the instigator of all this issue here. When we got involved, we figured out that Burlington likely owed a duty to defend under reservation. I reached out to the greater New York and said, hey, why is Scottsdale, who's got the identical contract provisions, also not being sought out? That's what led to this lawsuit now. My investigator, the key problem or question here is that the same principle for both Burlington's insured is also the same principle for Scottsdale's insured. So when Burlington's investigator went to him in 2012 and said, give us the contracts, he gave us the contracts. Not only did he give us the contract for my insured, he also gave us the contract between Park City and Scottsdale's insured. Why that contract never made it anywhere else is probably attorney error below. When I got it, I said, hey, we've got this contract, let's figure it out. Why Park City didn't realize they had a contract with Scottsdale's insured is unknown. They're the one in the best position that would have given them better arguments for additional insured and a contractual indemnity. But that's besides the point. Because Mr. Chain, who was the representative who signed on behalf of Park City, has since submitted an affidavit saying, when I testified before there was no contract, I made a mistake. There is a contract. That's my signature. When Mr. Swiat, who is the principal for Scottsdale's insured, was deposed in this case, he said, that's my contract. That's the signature. That's Mr. Chain's signature. So this whole idea of we don't know where the contract came from is ridiculous. Both parties who signed it said they signed it, said it's valid and applicable. Indeed, in 2016, Mr. Swiat testified twice in the underlying case. When he was first testified on behalf of Bridging, he didn't mention that contract, Bridging was Scottsdale's insured. The second time, when he testified on behalf of Burlington's insured restorers, he said, by the way, there's another contract out there between Park City and Bridging. It's got the same terms as the Bridging, as the restorers' Park City contract, and they discussed it, and counsel said we need to get a copy. Your basic argument is that the question of the existence of a contract was not settled in any way that binds us in the earlier decisions. The district court found a contract, and this was within the statute of limitations, and given what New York law is about duties to defend, that settles it. That settles it. There's nothing in the underlying case which was addressed in this case. And even the cases cited by appellant actually help us, because, matter of fact, in the Port Authority v. Brickman case, where they're citing the support, there was the same parties, same contract. The issue, they ultimately found there was a duty to defend in the second case. So it actually helps our case not impose. I'm happy to answer any questions that your honors have. Thank you. Thank you. Thank you, counsel. We'll take the case under advisement. Thank you. Before we leave, though, I'm constrained to tell you, Ms. Adelson, that litigants owe this court a duty of candor. And it is not helpful to your client or to us for you to misrepresent the record. Thank you. May I respond to that? And I understand, and I've been before this court before, so I take what you say very strongly. There is no argument about race judicata or collateral estoppel on pages 14 to 18 of your brief. You do not make that point. We cite to case law that discusses it, even though it goes more towards the- Look, I just looked at the pages. I don't want to belabor this discussion. Thank you.